UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BERK ERATAY,<br>        Defendant. | Crim. No. 2:22-cr-00058 |

GOVERNMENT'S SENTENCING MEMORANDUM

On March 13, 2024, defendant Berk Eratay pleaded guilty to an information charging three counts: Count 1 – Conspiracy to Commit Murder-for-Hire With Death Resulting, in violation of 18 U.S.C. § 1958; Count 2 – Murder-for-Hire With Death Resulting, in violation of 18 U.S.C. §§ 1958 and 2; and Count 3 – Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i). The Court has scheduled sentencing for September 25, 2025. The government submits this memorandum to outline its position on sentencing. As set forth below, the government respectfully requests that the Court sentence Berk Eratay to 120 months' imprisonment.

    A.    <u>Factual Background</u>

The Presentence Report ("PSR") accurately summarizes the defendant's conduct. PSR at ¶¶ 18-58. The Court is well-versed in the defendant's involvement following his lengthy testimony at trial in March and April of 2025. Eratay was a significant witness in the government's investigation and prosecution of Serhat Gumrukcu for the January 6, 2018, murder of Gregory Davis. As proven at trial, Berk Eratay hired his former next-door neighbor, Aron Ethridge, to find a hitman to execute Gregory Davis on behalf of Gumrukcu. Ethridge hired Jerry Banks. On January 6, 2018, Banks posed as a Deputy U.S. Marshal and drove to Davis's house

in Danville, Vermont in what appeared to be an unmarked police vehicle. Banks knocked on the door to Davis's house and, when he answered, presented a phony arrest warrant purporting to show that Davis was under arrest for various federal offenses. Davis entered Banks's car, and Banks drove him to Barnet, Vermont where he shot Davis in the back more than ten times from close range. Banks buried Davis's body in snow and left him by the side of the road. As proven at trial, Eratay and Gumrukcu wanted Davis killed because of a business deal gone bad involving Greg Davis. In furtherance of that business deal, Eratay posed as Murat Gumrukcu at Serhat Gumrukcu's direction, and sent hundreds of emails about a purported oil transaction. Among other things, Eratay coordinated the payment of Ethridge (and Banks) through funds that Gumrukcu provided. These payments continued in the years following Davis's death and involved cryptocurrency payments from Gumrukcu to Ethridge.

B.    Sentencing Guidelines

The government submits that the Probation Department correctly calculated the defendant's sentencing range under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") in the PSR.

Specifically, the PSR calculated a total offense level of 43 under the Guidelines, which is premised on a base offense level of 43 pursuant to U.S.S.G. §2A1.1(a), a two-point enhancement for a conviction under 18 U.S.C. § 1956, pursuant to U.S.S.G. §2S1.1(b)(2)(B), an additional two-point enhancement for the physical restraint of the victim pursuant to U.S.S.G. §3A1.3, and a three-point reduction for timely acceptance of responsibility pursuant to U.S.S.G. §3E1.1 which brought the offense level to 44, however pursuant to Chapter 5, Part A (comment n.2), the highest possible total offense level is 43. PSR ¶¶ 67-76.[1]

---

[1] While the government does not object to the Guidelines calculation, the United States nevertheless notes that the two-point enhancement for restraining the victim under U.S.S.G. §3A1.3, is not a part of the first-degree murder

Based on the defendant's criminal history, the PSR correctly found the defendant to be in criminal history category I. PSR ¶ 81.

Importantly, the government believes that following a motion pursuant to U.S.S.G. § 5K1.1, the defendant's total offense level will be 31, and with a criminal history category of I, his advisory sentencing guidelines range will be 108-135 months' imprisonment. Accordingly, the government respectfully recommends a sentence of 120 months (10 years) of imprisonment.

C.  Section 3553(a) Factors

The government submits that a sentence of 120 months of imprisonment is sufficient, but not greater than necessary, to accomplish the goals of the Sentencing Reform Act. In recommending this sentence, the government acknowledges and recognizes the defendant's cooperation, his acceptance of responsibility, lack of criminal history, and other personal characteristics.

First, the nature and circumstances of this offense are nearly unimaginable. *See* 18 U.S.C. § 3553(a)(1). The murder-for-hire conspiracy that took the life of Gregory Davis is unconscionable. The killing of Davis was planned and premeditated. Gregory Davis's death was a brutal, execution style, killing of a father of six (Davis's wife was pregnant with their seventh child at the time of his death). For his part, Eratay played a critical role in financing and ensuring the carrying out of the murder. It was Eratay who helped set the chain of events in motion, in short, because of his personal and business relationship with Serhat Gumrukcu and

---

guideline and seems to unnecessarily inflate the calculation. And the evidence in this case demonstrates that Eratay was not aware that Davis was restrained prior to his murder. Further inflating the calculation is the two-point enhancement pursuant to U.S.S.G. § 2S1.1(b)(2)(B) due to Eratay's plea to a specific money laundering offense. The government believes that most appropriate assessment of Eratay's conduct should simply be the first-degree murder guideline. Accordingly, the government believes that the Court should discount as many as four levels from Eratay's final offense level under Section 3553(a) to account for the otherwise inflated offense level.

the 2017 problems they faced due to their business dispute with Davis. Eratay and Gumrukcu were motivated by greed. So, they committed an unforgiveable crime.

The history and characteristics of the defendant likewise support a sentence of 120 months. *See* 18 U.S.C. § 3553(a)(1). Eratay's background offers significant mitigation. Eratay has no criminal history. While he participated in a sham marriage to obtain legal status in the United States, Eratay was otherwise seeking to further his education in Nevada while trying his hand as working as an entrepreneur at a Pizzeria. Eratay also has exhibited significant remorse throughout this case. To that end, he wrote a letter expressing his contrition to Mr. Davis's widow and he testified extensively about why he decided to cooperate with the federal government which was, in part, to try to right his previous wrong.

While incarcerated, Eratay has also lost several close family members, his father and grandmother, who died before Eratay had a chance to say goodbye. Nevertheless, Eratay has engaged with his rehabilitation while pending sentence. For example, he participated in 64 weeks of MRT. Usually a 16-week program, Eratay remained involved to mentor other inmates. Similarly, he finished a recovery group and served as a mentor for those involved in that program as well. Eratay's commitment to his rehabilitation is even more remarkable when juxtaposed with the significant mental and emotional challenges Eratay has faced while in custody. *See generally* PSR § 96. This offers significant mitigation, and coupled with his substantial assistance the government, supports the government's recommendation that he receive no less than 10 years. The government did not arrive at this recommendation lightly, as those who participate in murders are usually faced with sentencing recommendations far exceeding 120 months' imprisonment.

Furthermore, the defendant's cooperation in this case was incredibly significant. The

4

defendant explained the details of his relationship with Gumrukcu which spanned decades and included a complex scheme to defraud Gregory Davis of property owed to him under contact. And, of course, it included the specifics of the Davis murder. During his testimony, Eratay was rigorously cross-examined regarding certain jail calls he made to his family members. Many of these phone calls were highly emotional and came in the aftermath of Eratay's loss of two close family members who died during his incarceration. Finally, the jury's verdict in this case, convicting Gumrukcu of all counts, reflects that they credited Eratay's testimony.

In crafting the defendant's sentence, the Court should consider the need to promote respect for the law. There is a compelling need for general deterrence in this case. Murder strikes at the fabric of society. Sadly, no matter what sentence the Court gives to Eratay and his co-conspirators, it will not undo Davis's murder. The Davis family will never see their son, husband, or father ever again. Furthermore, the actions underlying the defendant's crimes are not the result of accident or mistake. Rather, the defendant's actions appear to have been motivated by his own greed and his desire to protect Gumrukcu, whom Eratay considered a brother. All the defendant's actions appear to have been part of an intentional plan to protect Gumrukcu from Davis going to authorities with evidence of their fraud, which would have scrapped Gumrukcu's lucrative bio-tech payout. By attempting to protect Gumrukcu, Eratay committed the most serious offense contemplated by our criminal justice system, even if it was not Eratay himself who fired the fatal shots into Davis's back.

To be sure, the Court's sentencing of Eratay is an important step in the vindication of the rights of Gregory Davis's family. A sentence of 10 years will also provide just punishment for the defendant's offenses, deter his criminal conduct and protect the public from his further crimes. It will also send a message to the community that, even in the case of significant remorse,

extensive mitigation, and extraordinary cooperation, at least a decade in prison is appropriate for a participant in a murder.

D. Conclusion

In sum, the government respectfully requests that the Court sentence the defendant to 120 months' imprisonment, by considering the sentencing record before the Court and the 18 U.S.C. § 3553(a) factors.

Dated at Burlington, in the District of Vermont, September 16, 2025.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL P. DRESCHER
Acting United States Attorney

By: /s/ Zachary B. Stendig
ZACHARY B. STENDIG
PAUL VAN DE GRAAF
Assistant United States Attorneys
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725